**FRONTIER HEALTH INC. d/b/a Woodridge Hospital**

v.

**Donna E. SHALALA, Secretary of Health and Human Services**

No. 2:00–CV–157.

United States District Court, E.D. Tennessee, at Greenville.

May 10, 2000.

Thomas L Kilday, Jeffrey M Ward, Milligan & Coleman, Greeneville, Thomas L Nelson, Nashville, for plaintiff.

Pamela G. Steele, U.S. Department of Justice, Office of U.S. Attorney, Knoxville, M. Neil Smith, Helen C.T. Smith, U.S. Department of Justice, Office of U.S. Attorney, Greeneville, for defendant.

### *OPINION AND ORDER*

HULL, District Judge.

This matter came before the Court on Tuesday, May 9, 2000, on motion of plaintiff, Frontier Health Inc. d/b/a Woodridge Hospital, for a preliminary injunction which would enjoin the defendant, Donna

E. Shalala, Secretary of Health and Human Services, from terminating Woodridge Hospital's participation in the Medicare or Medicaid programs and from notifying any state agency or other entity or person of any termination, until the administrative appeal process had been exhausted. [Doc. 7].

The Secretary argued that the Court lacked jurisdiction to grant an injunction, pointing out that the exclusive provisions for judicial review of the termination of a provider agreement are found at 42 U.S.C. § 1395cc(i)(1)(A), which incorporates 42 U.S.C. § 405(g). She suggested that this case was controlled by the recent Supreme Court decision in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000).

■ The Court agrees with the Secretary that it lacks jurisdiction to review the *merits* of her actions before all administrative remedies have been exhausted. However, the Court disagrees that *Illinois Council* controls the instant situation. That case deals with a complaint filed in a district court under its federal question jurisdiction challenging the Secretary's regulations. It does not address the Court's powers to grant preliminary injunctive relief. However, it seems to suggest that such power does exist, with jurisdiction predicated on 28 U.S.C. § 1331, if the Secretary's actions have the practical effect of totally denying the possibility of later judicial review. 102 S. Ct. at 13. Arguably this is that type of situation. If Woodridge Hospital were forced to close down before its administrative remedies had been exhausted, it would not be in a position to seek judicial review at the close of the administrative process. Injunctive relief of the type sought in this case has been granted in a similar case. *See: International Long Term Care, Inc. v. Shalala*, 947 F.Supp. 15 (D.D.C.1996).

In deciding whether or not to enjoin the termination of participation in Medicare and Medicaid, the Court considered the usual four injunction factors: 1) the plaintiff's likelihood of success in its administrative appeal; 2) whether the plaintiffs would suffer irreparable harm in the absence of an injunction; 3) whether granting the injunction would cause substantial harm to others; and 4) the impact of the injunction on the public interest. *See: Dixie Fuel Company v. Commissioner of Social Security*, 171 F.3d 1052 (6th Cir. 1999).

■ Based on the testimony and exhibits presented in connection with the motion, the Court **FINDS**, with regard to the first factor, that the plaintiff's likelihood of success in its administrative appeal is substantial. It is clear that the hospital has worked hard to cure any deficiencies in its procedures. Also, it would appear that none of the conditions now existing at the hospital pose an immediate risk to patient safety. The hospital has also satisfied the Court that, in the absence of an injunction, not only it, but its patients and employees, would suffer irreparable harm. At the present time, approximately 60% of the hospital's gross revenues come from the Medicare and Medicaid programs. In addition, many third-party payors, especially managed care plans, would likely cease to permit their patients to be hospitalized at Woodridge if it lost its Medicare certification. The hospital anticipates an immediate loss of approximately 75% of its revenue if an injunction does not issue and it is likely that the hospital would be forced to close its doors before it could exhaust its administrative remedies. With regard to the third factor, the Secretary did not convince the Court that *any* harm would be suffered by keeping the hospital open during the administrative appeal. Finally, the fourth factor, which concerns the impact of an injunction on the public interest militates strongly in favor of the plaintiffs. Woodridge Hospital is the only psychiatric hospital in the eight easternmost counties of Tennessee which is able to treat the most acutely ill patients. Having to move mentally ill people to distant facilities would not only be disturbing to the pa-

tients but would take them away from current therapists and family support. While the Court recognizes that it is possible that the hospital may eventually have to shut down and move all these patients, it is more likely that it will succeed on the merits of its appeal. If the patients have been moved prematurely, they would be disrupted a second time if the hospital were to reopen.

In light of the foregoing, the Court hereby **GRANTS** the plaintiff's motion for a preliminary injunction and **ENJOINS** the Secretary of Health and Human Services from terminating Woodridge Hospital's participation in the Medicare and Medicaid programs and from notifying any state agency or other entity or person of any purported termination, until the administrative appeal process has been completed and the Secretary has issued her final decision.